# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

JOSHUA HOCQUARD,

    Plaintiff,

    v.

GRAND VALLEY STATE UNIVERSITY
BOARD OF TRUSTEES, TODD SANDER,
*in his individual and official capacity,* ASHLEY
VAN DAM, *in her individual and official capacity*,
and JEFFREY POTTEIGER*, in his individual and
official capacity,*

    Defendants.

Case No.:

Hon.

---

Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, Michigan 48108
(734) 663-7550
fgalguera@nachtlaw.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff Joshua Hocquard, through his counsel, NACHTLAW, P.C., brings his

Complaint as follows:

## INTRODUCTION

1.    Plaintiff, Joshua Hocquard, (hereinafter referred to as "Plaintiff")

brings this civil rights action against Defendant Grand Valley State University

(hereinafter referred to as "GVSU") to remedy harassment and a hostile education

environment, pursuant to the 42 U.S.C. § 1983, Title IX, Michigan's Elliott-Larsen

Civil Rights Act, Breach of Contract, Intentional Infliction of Emotional Distress, Fraudulent Misrepresentation, and Gross Negligence.

## PARTIES, VENUE, AND JURISDICTION

2.     Plaintiff is a 30-year-old male, a resident of Grand Rapids, Michigan, and was a graduate student enrolled in the Doctor of Physical Therapy (hereinafter referred to as the "Program") at GVSU in Allendale, Michigan starting from August 2022 and planned to graduate with the Class of 2025.

3.     Defendant GVSU Board of Trustees is the publicly elected governing body of GVSU.

4.     Defendant Todd Sander ("Defendant Sander" or "Dr. Sander") was, at all relevant times, the Director of the Doctor of Physical Therapy (DPT) Program at GVSU.

5.     Defendant Ashley Van Dam ("Defendant Van Dam" or "Ms. Van Dam") is the DPT Program Director of Clinical Education at GVSU.

6.     Defendant Jeffrey Potteiger ("Defendant Potteiger" or "Mr. Potteiger") is the Dean of the College of Health Professions at GVSU.

7.     The events underlying this Complaint occurred in Kent County, Michigan, within the Western District of Michigan, Southern Division.

8.     This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9.      This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims.

10.      A Notice of Intent was timely filed in the Michigan Court of Claims.

## STATEMENT OF FACTS

11.      Plaintiff was a student in GVSU's Program and maintained academic standing that met or exceeded all requirements.

12.      On or about January 5, 2025, Plaintiff was arrested following a false criminal accusation.

13.      In January 2025, Plaintiff immediately sought guidance from the University, eventually consulting with Dr. Mary Green, who referred him to Defendant Sander.

14.      Upon being told to connect with Defendant Sander, Plaintiff quickly attempted to set up a meeting.

15.      Upon reasonable belief, Plaintiff sent a couple of emails, placed a few calls, and even personally stopped by Defendant Sander's office to coordinate a time to speak.

16.      After weeks of emails without response, Defendant Sander finally responded and arranged a meeting with Plaintiff on February 10, 2025.

17.     During the February 10th meeting, Plaintiff honestly recounted the arrest and explained he was seeking advice on how to preserve his standing in the Program.

18.     Plaintiff offered to provide the details of the charges to the best of his ability, but Defendant Sander stopped him and instead asked whether Plaintiff would still be able to obtain his professional license and whether the charge was a felony or a crime punishable by years in prison.

19.     Plaintiff told Defendant Sander that he had already contacted the State of Michigan and confirmed that the plea being offered would not prevent him from obtaining his license, and that the plea did not involve a felony conviction.

20.     Defendant Sander then focused the discussion on Plaintiff's remaining clinical rotations.

21.     Defendant Sander told Plaintiff that if Plaintiff proceeded to trial, Plaintiff would have to pause his clinical rotations and delay them until the winter semester after trial.

22.     Defendant Sander actively discouraged Plaintiff from going to trial, indicating that doing so would require Plaintiff to pause and delay his clinical rotations.

23. Defendant Sander explicitly stated that if Plaintiff accepted a plea, he would be able to continue with his rotations as scheduled, subject to background checks.

24. Defendant Sander also assured Plaintiff of his full support and stated he would handle communication on the matter.

25. Defendant Sander took notes during that meeting, which he had Plaintiff sign.

26. Relying on these representations, Plaintiff worked with his criminal defense attorney to resolve the matter in a way that prioritized his academic journey.

27. Based on Defendant Sander's statement and guidance, Plaintiff accepted a plea agreement to a misdemeanor charge of indecent exposure on February 19, 2025, solely to preserve his academic schedule.

28. Plaintiff was sentenced on March 5, 2025.

29. Within five days, Plaintiff was meeting with Defendant Sander.

30. In this meeting, Defendant Sander again explicitly assured Plaintiff that because there was no felony conviction or bar to licensing, he would not be removed from the Program.

31. Plaintiff relied on these repeated assurances in deciding not to revoke his plea, even though he still had time after sentencing to do so if Program leadership had informed him that the plea would jeopardize his Program standing.

32.    On April 3, 2025, Defendant Sander corresponded with Plaintiff regarding scheduling Plaintiff's final two clinical rotations.

33.    Defendant Sander later corresponded with Plaintiff regarding walking at graduation and attending the white coat ceremony.

34.    On April 17, 2025, Defendant Ashley Van Dam emailed Plaintiff, inaccurately characterizing his disclosure as "recent," implying that he had delayed informing the University of his recount on his arrest on or about January 5, 2025, despite his constant outreach beginning in January.

35.    When Defendant Van Dam indicated that Defendant Sander would join the meeting, set for April 23, 2025, Plaintiff felt reassured because Defendant Sander already knew the facts and history of Plaintiff's situation.

36.    On April 24, 2025, notes from a meeting with Defendants Van Dam and Sander were circulated, which contained no concerns regarding dismissal or policy violations.

37.    Instead, as of April 24, 2025, Defendants were discussing a plan for clinical placement issues, course completion, and a graduation date.

38.    On April 29, 2025, Plaintiff cleared two additional background checks and was accepted for clinical placement.

39.    Three hours later, Defendant Van Dam emailed Plaintiff claiming she and Defendant Sander had "just received" information regarding his sentencing, despite months of prior communication.

40.    That statement was false or misleading because Defendants already knew, or should have known, of Plaintiff's criminal matter, plea, conviction, and related restrictions through months of communications and through correspondence circulated by Defendant Van Dam herself on April 24, 2025.

41.    Plaintiff nonetheless responded to Defendant Van Dam and provided the requested information

42.    On May 3, 2025, Defendant Sander suddenly placed Plaintiff's clinicals on hold and limited his contact with University members.

43.    Plaintiff was confused because this abrupt reversal contradicted months of prior assurances, planning, and communications.

44.    On May 6, 2025, Plaintiff was accused of violating University policies STU 5.2.11 (Dishonesty), STU 5.2.27 (Violation of University Policy), and STU 5.2.26 (Violations of Local, State, or Federal Law).

45.    Defendants purposely cherry-picked what violations to bring against Plaintiff to deprive him of the full array of due process rights he should have been afforded.

46.     Plaintiff was given less than one day to prepare for these allegations and submit evidence.

47.     At a hearing on May 14, 2025, no consideration was given to Plaintiff's evidence, and the University dismissed Plaintiff in May 2025, even though he had already walked at graduation.

48.     Plaintiff's FERPA request later revealed that on May 2, 2025, Defendant Sander made a report of "general misconduct" as if he had only just learned of the matter, directly contradicting months of prior interaction.

49.     After being denied a fair hearing or appeal process, Defendant GVSU's Associate Vice President for Student Engagement instructed Plaintiff he could file a grievance

50.     On June 17, 2025, Plaintiff submitted grievance to Defendant Jeffrey Potteiger, Dean of the College of Health Professions.

51.     Defendant Potteiger confirmed receipt and promised to review the materials carefully.

52.     A month passed without a word from Defendants.

53.     After weeks of silence, Plaintiff emailed Defendant Potteiger on August 11, 2025.

54.     Defendant Potteiger's response – despite supposedly reviewing the matter carefully – was merely to re-direct Plaintiff the University's General Counsel.

55.     Plaintiff was understandably confused and communicated as much to Defendant Potteiger; Plaintiff responded that he understood the grievance process, as outlined in GVSU policy, to be handled between the grieving student and the University.

56.     On August 19, 2025, Defendant Potteiger refused to take further action, claiming the request was "moot" because Defendant Sander had resigned in May 2025, a representation which was not mentioned in previous correspondence.

57.     However, upon information and belief, Defendant Sander was still participating in Program events as late as July 11, 2025.

58.     Defendants purposely deprived Plaintiff of every opportunity to fight his dismissal.

59.     Defendants' deprivations have caused Plaintiff an immense amount of personal, financial, professional harm: Defendants lies and manipulations have left Plaintiff without the degree he walked for, caused him to plead to a crime he could have challenged, and have left him in academic and professional stagnation.

60.     Defendants' violations keep Plaintiff from advancing in his career.

<u>**COUNT I**</u>
**Violation of the Due Process Clause of the**
**Fourteenth Amendment to the U.S. Constitution**
**Pursuant to 42 U.S.C. § 1983**
*(Against the individual defendants for money damages in their personal capacities*
*and declaratory and injunctive relief in their official capacities)*

61.    Plaintiff incorporates the preceding allegations as if fully restated herein.

62.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that "no state shall… deprive any person of life, liberty, or property, without due process of law."

63.    42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

64.    As the Supreme Court long ago recognized in *Goss v. Lopez*, 419 U.S. 565 (1975), Plaintiff has a constitutionally protected liberty interest in his good name, reputation, honor, and integrity, which have been threatened and deprived by Defendant's actions against him.

65.    Plaintiff also had a property interest in maintaining his position at GVSU, see *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005), quoting *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 12 (1st Cir.1988) ("a student's interest 'in pursuing an education is included within the fourteenth amendment's protection of liberty and property.'").

66.    In claims arising from disciplinary proceedings against college students, courts have recognized that the stronger the private interest, the more likely a formal written notice – informing the accused of the charge, the policies or

regulations the accused is charged with violating, and a list of possible penalties – is constitutionally required. *Id*.

67. Part of this required notice is the student's right to be provided with "an explanation of the evidence against" him. *Endres v. Northeast Ohio Medical Univ.*,938 F.3d 281, 301 (6th Cir. 2019), quoting *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017).

68. A student is entitled to more formal procedures when they face greater consequences. *Mahaffey ex rel. Mahaffey v. Aldrich*, 236 F.Supp.2d 779, 787 (E.D. Mich. 2001), quoting *Goss*.

69. Defendants acted under color of law when they engaged in the conduct described herein, including, but not limited to, depriving him of proper process under the University's own procedures and the federal Title IX regulations, creating false documentation to bring false allegations against Plaintiff, and ultimately dismissing him from the Program.

70. Accordingly, Defendants' actions outlined *supra* violated Plaintiff's clearly established constitutional rights, of which any reasonable person in their position would have known; they are therefore not entitled to qualified immunity.

71. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, dismissal from GVSU; loss of income; loss of career opportunities and

earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

72.    Plaintiff is entitled to punitive damages because Defendants engaged in the above-described conduct with malicious and evil intent, in callous disregard of Plaintiff's federally protected rights.

**COUNT II**
**Sex Discrimination in Violation of Title IX**
**20 U.S.C. § 1681 *et. seq.***
*(against Defendants Grand Valley State University Board Of Trustees)*

73.    Plaintiff repeats and realleges the paragraphs set forth above with the same force and effect as though set forth in full herein.

74.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

75.    Plaintiff is a man.

76.    Defendants Grand Valley State University Board Of Trustees are institutions receiving Federal financial assistance.

77.    Plaintiff was a student of the University benefiting form its educational programming and resources.

78.    Defendants subjected Plaintiff to intentional discrimination including, but not limited to, making intentional misrepresentations to bolster false allegations

against Plaintiff, failing to give Plaintiff his full rights under the federal Title IX regulations, depriving him of due process during his dismissal proceedings, failing to give evidence equal weight, and ultimately dismissing him.

79.    But for his gender, Plaintiff would have not been treated as described above and throughout this complaint.

80.    Defendants applied their policies and procedures in a manner that discriminated against Plaintiff on the basis of sex, causing him serious and unjustified damage.

81.    Sex-based bias was a motivating factor behind Defendants' commencement of disciplinary proceedings against Plaintiff, decision of which procedures to commence, and deprivation of his rights throughout those processes.

82.    Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of Title IX, motivated by a desire to punish him for his gender.

83.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, dismissal from GVSU loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT III
### Gender Discrimination in Violation of the Elliott-Larsen Civil Rights Act

*(Against Defendants Grand Valley State University Board Of Trustees*

84.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

85.    The State of Michigan has waived its Eleventh Amendment sovereign immunity and consented to suit under ELCRA on behalf of Defendant CMU, which are arms of the state.

86.    ELCRA does not permit gender discrimination within educational institutions.

87.    Plaintiff is a man.

88.    Plaintiff was qualified to be a student of the Department.

89.    Defendants have intentionally discriminated against Plaintiff by depriving him of his rights under their own policies, making intentional misrepresentations to bolster false allegations against Plaintiff, failing to give Plaintiff his full rights under the federal Title IX regulations, depriving him of due process during his dismissal proceedings, failing to give evidence equal weight, and ultimately dismissing him.

90.    Defendants would have not treated Plaintiff as discussed herein if he was not a man.

91.    Defendants acted willfully.

92.    Gender bias was a motivating factor behind Defendants' commencement of disciplinary proceedings and corrective action against Plaintiff.

93.     Defendants applied its policies and procedures in a manner that discriminated against Plaintiff on the basis of sex, causing him serious and unjustified damage.

94.     As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

**COUNT IV**
**Breach of Contract**

95.     Plaintiff incorporates the preceding allegations as if fully restated herein.

96.     A contractual relationship existed between Plaintiff and the Grand Valley State University, with legally binding promises being contained in the University's policies and procedures.

97.     Those policies and procedures outline how the University must, among other things, handle disputes, assess its students, and investigate students and how punishment is to be given to students found responsible for violations of University policy.

98.     Defendants were required to follow these written policies.

99.     Based on the facts set forth in this second amended complaint, Defendants materially breached its agreements, express and/or implied, when they

punished Plaintiff, actively ignored both his evidence, and made false representations to bolster false allegations.

100.   Defendants also misapplied their policies and procedures to discriminate against Plaintiff on the basis of gender, causing him serious and unjustified damage.

101.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, dismissal from the University; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future. Plaintiff has also been forced to incur court costs and attorney's fees.

<u>**COUNT V**</u>
**Intentional Infliction Of Emotional Distress**
*(Against individual defendants)*

102.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

103.   Defendants' conduct, described above, was so outrageous in character, and so extreme in degree, as to go above all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

104.   Defendants' conduct amounted to intentional infliction of emotional distress and caused damages to Plaintiff as described herein.

## COUNT VI
## FRAUDULENT MISREPRESENTATION
*(Against individual Defendants Sander and Van Dam)*

105. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

106. Defendants Sander and Van Dam made material representations as to the disclosures made by Plaintiff, mainly claiming that they were assisting him and would ensure that the decisions being made by all of them as team would be honored by the University.

107. These representations were all false.

108. Defendants Sander and Van Dam knew these representations were false as they were acting on their own to then justify their subsequent actions; in May of 2025, Defendant Sander filed a false report alleging Plaintiff had been lying about his legal situation and had violated University Policy.

109. Defendants Sander and Van Dam made the representations of support to Plaintiff before May of 2025 with the intention that Plaintiff would act upon their assurances.

110. Plaintiff did in fact act in reliance of their representations – he tailored his whole strategy for tackling his criminal matter not around the evidence he had, but on the promises made by Defendants as to his ability to remain and work through the Program.

111.    As a result of his reliance on Defendants' statements, Plaintiff was set up for an improper dismissal.

112.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, dismissal from the University; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future. Plaintiff has also been forced to incur court costs and attorney's fees.

## COUNT VII
### Gross Negligence
*(Against individual defendants)*

113.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

114.    The individual Defendant's conduct, described above, was "so reckless as to demonstrate a substantial lack of concern for whether an injury results", constituting gross negligence under Michigan law. MCL 691.1407(8)(a).

115.    Defendant is not therefore not entitled to governmental immunity.

116.    The individual Defendant's conduct, described above, was a direct and proximate cause of injury to Plaintiff described herein

### RELIEF REQUESTED

For all the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

a.  A declaration that the practices and actions of Defendants are unlawful practices in violation of the U.S. Constitution, 42 U.S.C. § 1983, Title IX, and Michigan's ELCRA;

b.  An award of compensatory damages in whatever amount he is found to be entitled;

c.  An award of punitive damages in whatever amount he is found to be entitled;

d.  An award of exemplary damages in whatever amount he is found to be entitled;

e.  An award of interest, costs, reasonable attorney fees, and expert witness fees;

f.  All appropriate equitable and/or injunctive relief; and

g.  Whatever other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff Joshua Hocquard, by and through his attorneys, NACHTLAW, P.C., hereby demands a trial by jury of the issues so triable in the above-captioned cause of action.

Respectfully submitted,

**NACHTLAW, P.C.**

*/s/ Fabiola A. Galguera*
Fabiola A. Galguera (P84212)
Attorneys for Plaintiff
501 Avis Drive, Suite 3,
Ann Arbor, MI 48108

(734) 663-7550
Fgalguera@nachtlaw.com

Dated: July 22, 2026